# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF TENNESSEE

| UNITED STATES OF AMERICA | ) | |
|---|---|---|
| | ) | |
| vs. | ) | CASE NO. 2:18-CR-00039-PLR |
| | ) | |
| JAVIER LUIS TORRES | ) | |

## MEMORANDUM AND ORDER

On November 20, 2018, the Honorable Clifton L. Corker, United States Magistrate Judge, filed a 9-page Report and Recommendation [R. 40], in which he recommended that Torres' motion to suppress [R. 31] be denied.

This matter is before the court for consideration of Torres' objections [R. 43] to the Report and Recommendation. As required by 28 U.S.C. § 36(b)(1) and Rule 72(b), Fed.R.Civ.P., the court has now undertaken a *de novo* review of those portions of the Report and Recommendation to which Torres objects. For the reasons that follow, the court finds Torres' objections without merit and the objections will be overruled.

The parties do not object to the magistrate judge's factual determinations, and the court concludes they are accurate. The magistrate judge's factual findings are as follows: On February 15, 2018, Trooper Rabun, a member of the Tennessee Highway Patrol, observed a black Chevrolet Impala traveling eastbound on Interstate 40, going slower than the flow of traffic. As Trooper Rabun proceeded to follow and observe the Impala, he witnessed the Impala speeding and following too closely behind a tractor-trailer. In response to these traffic violations, Trooper Rabun pulled behind the vehicle, activated his lights, and stopped the vehicle. When Trooper Rabun asked Torres for his license and registration, Torres stated the car was a rental vehicle rented by his girlfriend but he was

an approved driver. Trooper Rabun asked where Torres was driving to, and Torres responded that he was going to New York for a funeral.

After running a check on Torres' license and registration, Trooper Rabun learned that while Torres did not have any outstanding warrants, he had crossed the border of Mexico sixty-eight times in the last year. Torres had most recently returned from Mexico six days before the stop. After returning Torres' license and registration, Trooper Rabun ask if there was anything illegal in the vehicle. Torres responded that there was nothing illegal in the car; however, he looked toward the passenger floorboard where there appeared to be a blanket and Victoria's Secret bag. When Trooper Rabun asked if he could search the vehicle, Torres responded "No." Trooper Rabun then gave Torres a verbal warning to not follow too closely, and that the recommended following distance was one car length per ten miles per hour. Trooper Rabun ended the traffic stop and returned to his vehicle.

Torres pulled back onto Interstate 40 going east. Trooper Rabun pulled out behind him and continued following Torres, remaining approximately twenty car lengths behind him. Several miles later, Trooper Rabun again witnessed Torres speeding. At the interchange of Interstates 40 and 81, Torres continued on Interstate 40 toward North Carolina, instead of going north on Interstate 81. Trooper Rabun called Trooper William Conners and his K-9 partner for backup. Trooper Rabun then observed Torres again following too closely behind another tractor-trailer. As Trooper Rabun closed the distance between them, Torres made a sudden lane change, causing another vehicle to brake suddenly to avoid a collision. Trooper Rabun decided to effect another traffic stop. He

activated his lights and Torres pulled over alongside a guardrail. For safety reasons, Trooper Rabun indicated to Torres to pull beyond the guardrail onto the exit ramp, and Torres did so.

Trooper Rabun motioned for Torres to exit the vehicle and join him at the rear of the vehicle. Torres asked Trooper Rabun the reason for stopping him. Trooper Rabun responded that he witnessed him commit more traffic violations and he believed he had enough "reasonable suspicion" to detain him "a little longer" until his partner arrived to deploy his K-9. Trooper Conners arrived on the scene approximately two minutes after Torres exited his vehicle. The K-9 alerted on the front, passenger side of the vehicle, and once more at the rear, passenger side of the vehicle. Trooper Rabun placed Torres in the back of his patrol vehicle, and the officers searched the Impala. In the front, passenger floorboard, under the blanket, they found a cardboard box containing four vacuum-sealed packages containing approximately nine pounds of cocaine.

The magistrate judge found that only two minutes and seven seconds elapsed between the time Torres exited his vehicle and Trooper Conners began the K-9 sniff. He concluded that Trooper Rabun's questions concerning his reasons for stopping Torres again as well as asking about Torres' travel intentions did not extend the stop in violation of the Fourth Amendment.

The determinative case here is *Rodriguez v. United States*, 135 S.Ct. 1609 (2015). In *Rodriguez,* the Supreme Court held "that a police stop exceeding the time needed to handle the matter for which the stop was made violates the Constitution's shield against unreasonable seizures." *Id.* at 1613. Although seemingly straightforward, the *Rodriguez*

3

rule is far easier to articulate than to apply.  In assessing whether a detention is too long in duration to be justified as an investigative stop, it is appropriate to examine whether the police diligently pursued a means of investigation that was likely to confirm or dispel their suspicions quickly.  *United States v. Sharpe,* 470 U.S. 675, 686 (1985).  *Rodriguez* requires that courts look at the officer's actions and determine whether he inevitably prolonged the stop beyond its original mission.  *Id.* at 1616.  The critical question is whether conducting the K-9 sniff adds time to the stop.  *Id.*

Questions about travel plans and history, and the driver's authority to operate the vehicle are generally acceptable.  *Id.*  Further, any questions reasonably related to the officer's safety are unquestionably permitted (*e.g.* inquiries about whether the vehicles' occupants have dangerous weapons).  *Id.*  Lines of inquiry that can be a sign that an officer is impermissibly extending a stop, however, are "questions relevant only to ferreting out unrelated criminal conduct."  *Id.*

Authority for the seizure ends when tasks tied to the traffic infraction are, or reasonably should have been, completed.  The Fourth Amendment may tolerate certain unrelated investigations that do not lengthen the roadside detention, but a traffic stop becomes unlawful if it is prolonged beyond the time reasonably required to complete the mission of issuing a ticket.  *Id.*  With this framework in mind, the court will assess Torres' objections.

Torres filed several objections to the R&R as follows:

1. Torres asserts that Trooper Rabun first made contact with him on the exit ramp at 10:39 and that Trooper Connors conducted the K-9 sniff at 10:43, so the stop was actually longer than the two minutes, seven seconds found by the magistrate judge.

Traffic stops are "especially fraught with danger to police officers," so an officer "may need to take certain negligibly burdensome precautions in order to complete his mission safely." *Rodriguez v. United States,* 135 S.Ct. 1609, 1616 (2015). Here, Trooper Rabun testified that Torres initially pulled over alongside the guardrail, which put the officer in a "compromising position." Trooper Rabun motioned Torres to pull just a little bit further up past the guardrail, which he did. Once Torres moved past the guardrail, Trooper Rabun got out and motioned for Torres to come to the back of the vehicle. Trooper Rabun talked to Torres about the continued traffic violations and his travel itinerary since Torres continued to travel east instead of turning north. Trooper Rabun asked Torres to move his vehicle for the purpose of protecting his own safety and possibly the safety of others. The court finds the two minutes it took for Torres to move his car did not impermissibly lengthen the traffic stop.

2. Torres argues that questions regarding his travel intentions had nothing to do with whether he was speeding or following closely. Rather, the questions were asked in order to investigate Trooper Rabun's suspicion that Torres was engaged in drug trafficking.

The magistrate judge found Trooper Rabun's questions regarding Torres' travel intentions and typical route were acceptable questions relating to the traffic stop. In *United States v. Lujan,* 2018 WL 3742452 at *5 (E.D.Tenn. Aug. 7, 2018) this court found such

questions "generally acceptable." Thus, the court agrees with the magistrate judge that this questioning did not impermissibly extend the traffic stop.

3.  Next, Torres argues that the questions regarding his education were unrelated to the traffic violations for which he was stopped.

Although Torres lists this finding of the magistrate judge in his objections, he provides no argument or legal citation to support his objection. The magistrate judge found that the two questions regarding Torres' education, totaling twenty-five seconds, did not impermissibly lengthen the traffic stop. The court agrees. Extraneous questioning is permissible so long as it does not "measurably extend" a detention. *United States v. Everett*, 601 F.3d 484, 493 (6th Cir. 2010). The court finds that the questions relating to Torres' education did not "measurably extend" the traffic stop.

4.  Similar to his third objection just discussed, Torres argues that Trooper Rabun's unrelated line of questioning did not make up the "bulk of the interaction between the two." The court disagrees.

After asking Torres to exit the vehicle, Trooper Rabun asks if Torres has any weapons on his person, to which Torres answers "No." Trooper Rabun then explains to Torres that he witnessed him commit additional violations and that he believes he has "reasonable suspicion" to justify detaining him for a little bit longer. They then discuss Torres' schooling. Torres volunteers personal details involving his job prospects and how he financed his education. Trooper Rabun then asks how much gas Torres has left, where exactly in New York he is heading, and how he normally travels there. Trooper Rabun asks Torres if he knows he is traveling in the wrong direction. Because Torres committed

6

the exact violations Trooper Rabun previously warned him not to commit, it was reasonable for Trooper Rabun to question him further. By this time, Trooper Connors had arrived and was walking his K-9 around Torres' vehicle.

5. Torres asserts that Trooper Rabun abandoned the enforcement of traffic regulations when he explained that he was going to detain him until Trooper Connors arrived to deploy is K-9. This objection is without merit. Deploying a K-9 during a traffic stop does not violate the Fourth Amendment if a second officer runs the dog while the stopping officer writes the citation. *Illinois v. Caballes,* 543 U.S. 405, 406 (2005). Here, Trooper Rabun had only detained Torres for approximately two minutes and was investigating the traffic violations when Trooper Connors' K-9 alerted to the presence of drugs in Torres' vehicle.

6. Torres, in objections 6, 7, and 8, again argues that the bulk of questioning was unrelated to the traffic violations and that Trooper Rabun abandoned the enforcement of traffic regulations when he questioned Torres the second time he was stopped. Torres argues Trooper Rabun lengthened the time of the stop to investigate the Trooper's suspicion that Torres was engaged in drug trafficking. The court has previously explained why Trooper Rabun's questioning of Torres did not impermissibly extend the traffic stop. Moreover, the officer's state of mind does not invalidate an action taken, as long as the circumstances, viewed objectively, justify that action. *Whren v. United States,* 517 U.S. 806, 813 (1996).

7. Torres also argues that although Trooper Rabun "released" him from the scene of the initial traffic stop, the totality of Trooper Rabun's actions amounted to a constructive detention of him. However, Torres provides no authority, and the court has found none, to support his position that he was constructively detained from the time of the initial stop.

Trooper Rabun previously warned Torres not to speed or follow too closely. Despite these warnings, Torres continued to commit the same violations. Trooper Rabun lawfully stopped the defendant twice pursuant to two separate series of traffic violations. Under these circumstances, the court finds it reasonable that Trooper Rabun wanted to stop him a second time and question him further. While Trooper Rabun was talking to Torres, Trooper Connors and his K-9 walked around the vehicle. The stop lasted only two minutes and seven seconds. Trooper Rabun testified that it would have taken "five to ten minutes" to complete writing a speeding ticket and a citation for following too closely. Thus, deployment of the K-9 did not extend the traffic stop. Conducting a dog sniff does not change the character of a traffic stop that is lawful at its inception and otherwise executed in a reasonable manner. *Caballes,* 543 U.S. at 408. Torres objections to the contrary are without merit.

After a careful review of the record, the court is in complete agreement with the magistrate judge's recommendation that Torres' motion to suppress be denied. Accordingly, the court **ACCEPTS IN WHOLE** the Report and Recommendation under 28 U.S.C. § 636(b)(1) and Fed.R.Civ.P. 72(b). It is **ORDERED**, for the reasons stated in

the Report and Recommendation, which the court adopts and incorporates into its ruling, that Torres' motion to suppress [R. 31] is **DENIED.**

Enter:

_____
**UNITED STATES DISTRICT JUDGE**